UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re VICURON PHARMACEUTICALS, INC. SECURITIES LITIGATION | ) ) ) | Civ. Action No. 04-CV-2627 |
| | ) | MEMORANDUM OF LAW IN SUPPORT |
| This Document Relates To: | ) ) ) | OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION |
| ALL ACTIONS. | ) ) ) ) | SETTLEMENT AND PLAN OF ALLOCATION |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ....................................................................................................1

II.     FACTS ....................................................................................................................3

III.    THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
        SETTLEMENTS.....................................................................................................3

IV.     THE SETTLEMENT IS PRESUMPTIVELY FAIR BECAUSE IT IS THE
        PRODUCT OF ARM'S-LENGTH NEGOTIATIONS AND IS SUPPORTED BY
        COUNSEL ..............................................................................................................5

V.      AN ANALYSIS OF THE *GIRSH* FACTORS CONFIRMS THAT THE
        SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE .........................6

        A.      The Complexity, Expense and Duration of This Litigation Warrant
                Approval of the Settlement ........................................................................6

        B.      The Absence of Objections Is Evidence of the Reasonableness of the
                Settlement ...................................................................................................7

        C.      The Stage of the Proceedings Weighs in Favor of Approval.....................8

        D.      The Risks of Establishing Liability Weigh in Favor of Approval ............9

        E.      The Risks of Establishing Loss Causation and  Damages .....................11

        F.      The Risks of Maintaining the Class Action Through Trial Weigh in Favor
                of Approval ..............................................................................................12

        G.      The Settlement Is Reasonable in Light of the Ability of Defendants to
                Withstand a Judgment..............................................................................12

        H.      The Settlement Is Reasonable in Light of All the Attendant Risks of
                Litigation ..................................................................................................12

VI.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION............13

VII.    CONCLUSION.....................................................................................................15

## TABLE OF AUTHORITIES

**Page**

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ......................................................................13

*Armstrong v. Bd. of Sch. Dirs.*,
   616 F.2d 305 (7th Cir. 1980) ...........................................................................6

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990) ...........................................................................13

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979) ..........................................................................13

*Bryan v. Pittsburgh Plate Glass Co.*,
   494 F.2d 799 (3d Cir. 1974) .............................................................................4

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ............................................................................................4

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ..........................................................................6

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ........................................................................................11

*Eichenholtz v. Brennan*,
   52 F.3d 478 (3d Cir. 1995) ...............................................................................5

*Fickinger v. C.I. Planning Corp.*,
   646 F. Supp. 622 (E.D. Pa. 1986) ....................................................................4

*Fisher Bros., Inc. v. Mueller Brass Co.*,
   630 F. Supp. 493 (E.D. Pa. 1985) ....................................................................4

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
   604 F. Supp. 446 (E.D. Pa. 1985) ....................................................................4

*Girsh v. Jepson*,
   521 F.2d 153 (3d  Cir. 1975).................................................................... *passim*

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006)..............................................................................5

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002)...........................................................................8

**Page**

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...................................................................................4, 5, 6, 13

*In re Chambers Dev. Sec. Litig.*,
    912 F. Supp. 822 (W.D. Pa. 1995)....................................................................................7

*In re Computron Software*,
    6 F. Supp. 2d 313 (D.N.J. 1998) ....................................................................................12

*In re Corel Corp. Inc. Sec. Litig.*,
    293 F. Supp. 2d 484 (E.D. Pa. 2003) .............................................................................14

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)........................................................................................3, 4, 5

*In re Gen. Pub. Utils. Sec. Litig.*,
    No. 79-1420, 1983 WL 22362 (D.N.J. Nov. 16, 1983) ....................................................8

*In re IKON Office Solutions, Inc.*,
    277 F.3d 658 (3d Cir. 2002).............................................................................................9

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000).....................................................................................13

*In re Lucent Techs., Inc. Sec. Litig.*,
    307 F. Supp. 2d 633 (D.N.J. 2004) ................................................................................14

*In re Remeron End-Payor Antitrust Litig.*,
    No. 02-2007(FSH), 2005 U.S. Dist. LEXIS 27011
    (D.N.J. Sept. 13, 2005) ...................................................................................................5

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003)....................................................................6, 7, 8, 9

*In re SmithKline Beckman Corp. Sec. Litig.*,
    751 F. Supp. 525 (E.D. Pa. 1990) ...................................................................................8

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)..................................................................................3, 4, 7, 12

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985),
    *aff'd*, 798 F.2d 35 (2d Cir. 1986) ................................................................................11

Page

*Meijer, Inc. v. 3M,*
No. 04-5871, 2006 U.S. Dist. LEXIS 56744
(E.D. Pa. Aug. 15, 2006)..................................................................................7

*Protective Comm. for Indep. Stockholders of
TMT Trailer Ferry v. Anderson,*
390 U.S. 414 (1968).......................................................................................4

*Robbins v. Koger Props.,*
116 F.3d 1441 (11th Cir. 1997) ..................................................................13

*Semerenko v. Cendant Corp.,*
223 F.3d 165 (3d Cir. 2000)........................................................................11

*Smith v. Dominion Bridge Corp.,*
No. 96-7580, 2007 U.S. Dist. LEXIS 26903
(E.D. Pa. Apr. 11, 2007) ..............................................................................14

*Stoetzner v. U.S. Steel Corp.,*
897 F.2d 115 (3d Cir. 1990).......................................................................5, 8

*Walsh v. Great Atl. & Pac. Tea Co.,*
96 F.R.D. 632 (D.N.J.), *aff'd,* 726 F.2d 956 (3d Cir. 1983)................................4

*Williams v. First Nat'l Bank,*
216 U.S. 582 (1910).......................................................................................3

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§77k.....................................................................................................7, 9, 11
§78j(b).................................................................................................7, 9, 11

Federal Rules of Civil Procedure
Rule 23 ..........................................................................................................13
Rule 23(e).............................................................................................1, 3, 5, 12

**SECONDARY AUTHORITIES**

7B Wright, Miller & Kane,
*Federal Practice and Procedure: Civil 2d* (1986)
§1797.............................................................................................................5
§1839.............................................................................................................5

## I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs, Massachusetts State Guaranteed Annuity Fund, Massachusetts State Carpenters' Pension Fund and the Greater Pennsylvania Carpenters' Pension Fund, respectfully submit this memorandum in support of their motion for final approval of the settlement of this class action for $12.75 million in cash and approval of the Plan of Allocation of settlement proceeds.  The terms of the settlement are set forth in the Stipulation of Settlement dated as of January 5, 2007 (the "Stipulation").[1]  The settlement, which was reached after a substantial litigation efforts by counsel for the Lead Plaintiffs, and with the assistance of an experienced mediator, is an outstanding result and merits the approval of the Court.

This case has been vigorously litigated for nearly three years.  At every stage of the litigation, counsel for Defendants asserted aggressive defenses and expressed their belief that Lead Plaintiffs would not prevail on the claims asserted.  By the time the settlement was reached, Lead Plaintiffs' counsel had briefed and argued a motion to dismiss, reviewed and analyzed over four hundred thousand pages of documents produced by Defendants and third parties, successfully obtained class certification, interviewed witnesses, and consulted with experts in the fields of medicine, FDA approval processes, materiality, loss causation and damages.

As discussed herein and in the accompanying Declaration of Laura Andracchio in Support of Final Approval of Class Action Settlement and Plan of Allocation, and Award of Attorneys' Fees

---

[1]    Unless otherwise defined herein, capitalized terms should have the meaning ascribed to them in the Stipulation.  The Stipulation was previously provided to the Court in connection with Lead Plaintiff's Memorandum of Law in Support of Motion for Preliminary Approval of Settlement.

and Reimbursement of Expenses ("Andracchio Declaration"), Lead Plaintiffs faced significant risks in obtaining a favorable outcome but have, nonetheless, obtained an excellent result.[2]

Lead Plaintiffs were faced with the formidable task of proving that Defendants knew that their statements regarding the potency of the Company's esophageal candidiasis drug and its relapse rates were materially misleading and caused the Company's stock to trade at artificially inflated prices. Defendants vehemently denied any and all liability, asserting that their statements were not misleading and were, in any event, not material. Defendants also maintained that they did not act with scienter. In addition, Defendants claimed that their public statements regarding the prospects for approval of its product were at the heart of the case, and those statements were forward looking, requiring Lead Plaintiffs to prove that Defendants **knew** the statements were false at the time they were made.

Lead Plaintiffs also faced significant risks in establishing loss causation and the amount (if any) of damages suffered by the Class. Defendants claimed that Lead Plaintiffs could not demonstrate "loss causation," *i.e.*, that Lead Plaintiffs and the Class did not suffer any "economic loss" and any loss was caused by circumstances other than Defendants' misstatements and omissions.

In short, Lead Plaintiffs faced numerous obstacles in proving both liability and damages. There was no certainty, given Defendants' vigorously asserted defenses, that Lead Plaintiffs and the Class would prevail on either liability or damages. The proposed settlement eliminates these and many other risks of continued litigation.

---

[2]    The Andracchio Declaration contains a detailed description of the history of the litigation, including the claims asserted, the proceedings during the course of the litigation, the investigation and discovery undertaken, the settlement negotiations and the substantial risks of continued litigation.

Lead Counsel, who are well-respected in the field and have extensive experience in prosecuting securities class actions, have concluded that the settlement is an excellent result and clearly in the best interests of the Class.  This conclusion is based on, among other things, an analysis of the evidence, the legal and factual issues presented, and the risk that a jury would find favor with Defendants' arguments and absolve them of liability.  Significantly, the Lead Plaintiffs who were appointed by the Court and actively involved in this litigation support Lead Counsel's conclusion and believe the settlement represents an outstanding recovery on behalf of the Class.  For reasons set forth herein, it is respectfully submitted that the settlement is eminently fair, reasonable and adequate to the Class and should be approved by the Court.  Moreover, the Plan of Allocation of settlement proceeds is based on a reasonable theory of damages and is necessarily fair, reasonable and adequate.

## II.    FACTS

The Court is respectfully referred to the Andracchio Declaration for a detailed description of the history of the litigation, the claims asserted, the motion practice, the investigation and discovery undertaken, the negotiation and substance of the settlement, and the substantial risks and uncertainties presented by and overcome in this action, and the risks of continued litigation.

## III.    THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well settled that "[c]ompromises of disputed claims are favored by the courts."  *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should . . . be encouraged.").  Settlement spares the litigants the uncertainty, delay and expense of a trial and appeals while simultaneously reducing the burden on judicial resources.

Federal Rule of Civil Procedure 23(e) provides that a class action shall not be dismissed or compromised without the approval of the court.  *See also In re GMC Pick-Up Truck Fuel Tank*

*Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("*GMC Trucks*"). In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity." *Id.* at 784. *See also Warfarin*, 391 F.3d at 534 (same). The ultimate determination whether a proposed class action settlement warrants approval resides in the court's discretion. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424-25 (1968).

While this Court has discretion in determining whether to approve the settlement, it should be hesitant to substitute its judgment for that of the parties who negotiated the settlement. *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985). "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (citation omitted); *Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983). The court may rely on the judgment of experienced counsel and should avoid transforming the hearing on the settlement into a trial on the merits. *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974); *Walsh*, 96 F.R.D. at 642.

In determining the adequacy of a proposed settlement, the court should ascertain whether the settlement is within a range that responsible and experienced attorneys could accept, considering all relevant risks. *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986). That analysis "'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (citation omitted). The court must therefore consider whether the proposed settlement is "fair, reasonable, and adequate." *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001). In *Girsh v. Jepson*, 521 F.2d 153, 157 (3d

Cir. 1975), the Third Circuit advised district courts to consider the following factors in deciding whether to approve a proposed settlement of a class action under Rule 23(e):

> "(1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . ."

*Id.* at 157 (citation omitted). *See also In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164-65 (3d Cir. 2006); *GMC Trucks*, 55 F.3d at 782; *Eichenholtz v. Brennan*, 52 F.3d 478, 488 (3d Cir. 1995); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118 (3d Cir. 1990); 7B Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* §1797 (1986); 7C Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* §1839 (1986).

As set forth below and in the Andracchio Declaration, the settlement is an excellent result, is presumptively fair, and clearly satisfies the *Girsh* factors. Substantial doubt exists as to whether any greater recovery could have been obtained against Defendants in the absence of the settlement, especially in light of the difficulty of proving Defendants' knowledge of the falsity of their statements regarding FDA approval of its drug, materiality and loss causation. Accordingly, the settlement is superior to another very real possibility – little or no recovery whatsoever.

## IV.    THE SETTLEMENT IS PRESUMPTIVELY FAIR BECAUSE IT IS THE PRODUCT OF ARM'S-LENGTH NEGOTIATIONS AND IS SUPPORTED BY COUNSEL

The Third Circuit "affords an initial presumption of fairness for a settlement 'if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Remeron End-Payor Antitrust Litig.*, No. 02-2007(FSH), 2005 U.S. Dist. LEXIS 27011, at *44 (D.N.J. Sept. 13, 2005) (quoting *Cendant*, 264 F.3d at 233 n.18). Each of

these factors weighs in favor of the presumption of fairness of this settlement. This action was litigated for more than two years before an agreement-in-principle to resolve the action was reached. The settlement resulted from arm's-length negotiations between highly experienced and capable counsel, with the assistance of a well-respected mediator of complex litigation, after significant discovery. Lead Plaintiffs negotiated vigorously to benefit the Class with a firm understanding of the strengths and weaknesses of Lead Plaintiffs' claims and the significant risks of proceeding with a trial.

"[T]he court is [also] entitled to rely heavily on the opinion of competent counsel." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980). Plaintiffs' counsel's "assessment of the settlement as fair and reasonable is entitled to considerable weight." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003). Lead Counsel, who have extensive experience prosecuting securities class actions, believe that the settlement is an excellent result and in the best interest of the Class. In reaching this conclusion, Lead Counsel considered the strength of Lead Plaintiffs' claims, the risks of establishing liability and damages in light of the evidence, as well as the risks that a jury may have ruled in favor of Defendants on some or all of the major issues, resulting in no recovery for the Class.

## V.    AN ANALYSIS OF THE *GIRSH* FACTORS CONFIRMS THAT THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.    The Complexity, Expense and Duration of This Litigation Warrant Approval of the Settlement

This factor "captures 'the probable costs, in both time and money, of continued litigation.'" *Cendant*, 264 F.3d at 233 (citation omitted). The Court must balance this settlement against the time and expense of achieving a potentially more favorable result through further litigation. There is no doubt that this litigation, like all securities class actions, is complex. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("class action suits have a well deserved reputation as being most complex"). The result of a trial of this action might well have turned on close questions of law,

evidence and fact. As discussed herein and in the Andracchio Declaration, there clearly were substantial risks to Lead Plaintiffs obtaining a favorable judgment. With respect to their claims brought under §11 of the Securities Act of 1933, Lead Plaintiffs would have to establish that the Registration Statement for Vicuron's July 2003 secondary offering was materially false or misleading. As to their §10(b) claims brought under the Securities Exchange Act of 1934, Lead Plaintiffs must prove that Defendants' alleged misrepresentations were material or that they were made with knowledge or reckless disregard for their truth or falsity. Moreover, Lead Plaintiffs would have to establish that Defendants' alleged securities violations caused harm to the Class and the amount of damages that the Class suffered. These issues involve complicated theories and statistical models and competing experts.

While Lead Plaintiffs have already expended substantial amounts of time and money to reach the point of the settlement, further significant time and expenses would be incurred to complete pre-trial proceedings and conduct a trial. Moreover, even if the jury returned a favorable verdict after trial, there is no question that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process. Thus, "[i]t is safe to say, in a case of this complexity, the end of that road might be miles and years away." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995). As a result, the settlement secures a substantial recovery for the Class undiminished by further expenses and without the delays, risks and uncertainties of continued litigation. *See also Rent-Way*, 305 F. Supp. 2d at 501.

### B.    The Absence of Objections Is Evidence of the Reasonableness of the Settlement

This *Girsh* factor "'attempts to gauge whether members of the class support the settlement.'" *Warfarin*, 391 F.3d at 536 (citation omitted). It is well settled that the absence of objections to a proposed class settlement is strong evidence that the settlement is fair and reasonable. *See Meijer, Inc. v. 3M*, No. 04-5871, 2006 U.S. Dist. LEXIS 56744, at *43 (E.D. Pa. Aug. 15, 2006) ("Th[e]

- 7 -

total absence of objections, coupled with such a low opt-out rate, argues in favor of the proposed Settlement."); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 124 (D.N.J. 2002). *See also Stoetzner*, 897 F.2d at 118-19 (concluding that, when "only" 29 members of a class of 281 objected, the response of the class as a whole "strongly favors settlement"); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990); *In re Gen. Pub. Utils. Sec. Litig.*, No. 79-1420, 1983 WL 22362, at *8 (D.N.J. Nov. 16, 1983).

In accordance with the Court's Order of February 1, 2007, the Court-appointed settlement administrator, Gilardi & Co. LLC ("Gilardi"), has mailed copies of the Notice of Pendency and Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Fairness Hearing ("Notice") to over 26,000 potential Class Members, published a summary notice of the settlement and hearing in *Investor's Business Daily* and posted the relevant documents on Gilardi's website. The Notice informed potential Class Members of their right to object to any aspect of the settlement. The time for objecting expired on April 20, 2007. That date has now passed, and no Class Members have filed objections, and only two have requested exclusion from the Class.

### C.    The Stage of the Proceedings Weighs in Favor of Approval

The third *Girsh* factor requires the Court "to consider the degree to which the litigation has developed prior to settlement." *Rent-Way*, 305 F. Supp. 2d at 502. "The goal here is to determine 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Id*. (quoting *Cendant*, 264 F.3d at 235). Here, counsel unquestionably had a firm understanding of the merits of the case at the time the settlement was reached.

This case has been vigorously litigated from start to finish for more than two years. At every stage of the litigation, Defendants have asserted aggressive defenses and expressed their belief that the Class would not prevail on the claims asserted. By the time the settlement was reached, Lead Plaintiffs had conducted significant discovery, reviewed and analyzed hundreds of thousands of

pages of documents produced by Defendants and third parties, interviewed witnesses, engaged in extensive motion practice and consulted with experts. This substantial discovery, motion practice and expert consultation gave Lead Plaintiffs' counsel an understanding of the strengths and weaknesses of the Class's claims, as well as the difficulties they would face in obtaining a favorable jury verdict. Having sufficient information to fairly evaluate the strengths and weaknesses of the Class's claims, Lead Plaintiffs' counsel have managed to settle this litigation on terms very favorable to the Class.

### D. The Risks of Establishing Liability Weigh in Favor of Approval

Lead Plaintiffs believe that they had a strong case as to liability. As in every complex case of this kind, however, the Class faced formidable obstacles to proving Defendants' liability. This *Girsh* factor requires an attempt to balance the likelihood of success at trial against the benefits of immediate settlement. *Rent-Way*, 305 F. Supp. 2d at 504. In order to establish a *prima facie* §10(b) claim, Lead Plaintiffs must prove that Defendants: (1) made a misstatement or an omission of a material fact; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) upon which the plaintiffs reasonably relied; and (5) that proximately caused their injuries. *In re IKON Office Solutions, Inc.*, 277 F.3d 658, 667 (3d Cir. 2002). In order to establish a *prima facie* case under §11, Lead Plaintiffs are only required to show that the Registration Statement issued in connection with the offering contained a material misstatement or omission. While liability for a false or misleading statement is virtually absolute against Vicuron, even if the misstatements or omissions were innocent, all of the Defendants had a "market decline" defense to damages in that they could not be held responsible for declines in Vicuron's stock price that were due to extraneous, or market factors, Moreover, if the Registration Statement contained adequate risk disclosures, any misstatement or omission might be rendered immaterial.

After reviewing over four hundred thousand pages of documents produced by Defendants and third parties, and conducting substantive witness interviews, Lead Plaintiffs believed that they were well on their way to developing evidence to sustain the heart of the allegations in this case, but realized they also faced considerable risks and defenses.

Whether Lead Plaintiffs would have been able to establish liability was a very real uncertainty in this case.  Lead Plaintiffs were faced with the formidable task of proving that Defendants' alleged misrepresentations were false, misleading and material.  There was a real risk that a jury could have found that Defendants accurately reported the relapse rates from the clinical studies, and that their statements regarding the significance of the relapse rates from the clinical studies could not have materially misled investors.  In addition, Defendants' statements about anidulafungin's competitive advantages could be found by a jury to be unimportant or immaterial to a reasonable investor's decision to buy Vicuron stock.  Moreover, a jury might find that Defendants' statements about the drug's "in vitro" potency were technically true and therefore not misleading.  A jury might also determine that the difference between "in vivo" and "in vitro" potency would have been understood by a reasonable investor, so that Defendants' statements about the drug's "in vitro" potency would not mislead investors.

Scienter would likewise not be easy to establish in this case, especially with no insider trading in Vicuron stock by Defendants.  Moreover, if the ultimate fact finder found Defendants' statements regarding the prospects for FDA approval of anidulafungin were forward looking, then Lead Plaintiffs' standard for proving scienter on those statements would be raised to actual knowledge of falsity.  Given the anticipated disagreement on the interpretation of the evidence, most likely presented by experts for each side, it is impossible to predict what the fact finder would decide if the litigation continued to verdict.  Establishing liability at trial was by no means a foregone conclusion and involved significant risks.

### E.    The Risks of Establishing Loss Causation and  Damages

Even if Lead Plaintiffs were successful in establishing liability, Lead Plaintiffs faced substantial risks in proving loss causation and damages.  The determination of damages is a complicated and uncertain process, involving the analysis of many subjective factors.  Damages in a §10(b) action are measured by "the difference between the purchase price and the 'true value' of the security [*i.e.*, value absent the fraud] at the time of purchase."  *Semerenko v. Cendant Corp.*, 223 F.3d 165, 184 (3d Cir. 2000).  With respect to both §10(b) and §11, Lead Plaintiffs must also show that the alleged false statements or omissions caused the damages.  Defendants consistently argued that Lead Plaintiffs could not demonstrate "loss causation" – that Lead Plaintiffs or the Class suffered an actual economic loss and that Defendants' misrepresentations or omissions proximately caused the loss.  Because of the complex nature of damages and loss causation in §10(b) and §11 actions, expert testimony is almost always necessary to establish the amount – and indeed the existence – of actual damages.  Here, the loss causation and damage assessments of the parties' respective experts who would testify at trial would be at polar opposites and the determination of the amount, if any, of damages suffered by the Class at the trial would have become a "battle of the experts."  Under the Supreme Court ruling in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 338 (2005), a "private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss."

Given the differing conclusions reached by the parties regarding damages, it is impossible to predict how a jury would react to the evidence presented.  *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("it is virtually impossible to predict with any certainty which [experts'] testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  Lead Plaintiffs realized that in the

"battle of experts" it was certainly possible that a jury would have sided with Defendants' damage experts and found no damages or only a fraction of the damages Lead Plaintiffs claimed. *See In re Computron Software*, 6 F. Supp. 2d 313, 320 (D.N.J. 1998).

### F.    The Risks of Maintaining the Class Action Through Trial Weigh in Favor of Approval

Federal Rule of Civil Procedure 23(c)(1) provides that a class certification order may be altered or amended any time before a decision on the merits. Thus, in any class action suit, even if a class is initially certified, as this one was, there is always a risk that a class will be modified or decertified prior to a decision on the merits.

In short, although the Court had certified the Class, there was no guarantee that class certification would be maintained.

### G.    The Settlement Is Reasonable in Light of the Ability of Defendants to Withstand a Judgment

The ability of defendants to pay more money does not render a settlement unreasonable. *See Warfarin*, 391 F.3d at 538 ("[T]he fact that DuPont could afford to pay any more does not mean that it is obligated to pay more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."). That Defendants could have paid more does not render this settlement unreasonable. This *Girsh* factor is neutral here.

### H.    The Settlement Is Reasonable in Light of All the Attendant Risks of Litigation

The settlement must be balanced against all the risks of continued litigation. Here, the settlement was entered into after the parties had conducted significant discovery and motion practice and had retained and consulted with experts on key issues relating to drug approval, medicine, scienter, loss causation and damages. As discussed herein and in the Andracchio Declaration, there were significant risks in establishing materiality and falsity. Lead Plaintiffs also faced considerable risks in proving loss causation and damages and Defendants were prepared to, and did, argue that

even if liability was established, the Class did not suffer any damages.  Lead Plaintiffs recognized

the possibility that a jury could find favor with Defendants' arguments at trial and find that no

liability existed or even if liability was established, there were no damages.

Moreover, many securities cases have been lost at trial, on post-trial motion, or on appeal.

For example, in *Robbins v. Koger Props.*, 116 F.3d 1441, 1449 (11th Cir. 1997), the Eleventh Circuit

overturned an $81 million jury verdict for the plaintiff class on loss causation grounds and ordered

the entire litigation dismissed.  In another action, the class won a $38 million jury verdict (exclusive

of prejudgment interest) and a motion for judgment *n.o.v.* was denied.  However, on appeal, the

judgment was reversed and the case dismissed, a total loss after ten years of active litigation.

*Backman v. Polaroid Corp.*, 910 F.2d 10, 18 (1st Cir. 1990).  *See also Anixter v. Home-Stake Prod.*

*Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades

of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 (2d Cir. 1979) (reversing

$87 million judgment after trial).

In sum, this settlement meets all the requirements for approval, and the Lead Plaintiffs urge

the Court to so find.

## VI.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

The Plan of Allocation establishes the method by which the Net Settlement Fund will be

distributed to Class Members submitting acceptable Proofs of Claim.  This plan – contained in the

Notice mailed to Class Members – was created by Lead Counsel based on calculations by, and

discussions with, their damage consultants.

Approval of a plan of allocation of settlement proceeds in a class action under Rule 23 is

governed by the same standards of review applicable to approval of the settlement as a whole: The

plan must be fair, adequate and reasonable.  *Cendant*, 264 F.3d at 231; *In re Ikon Office Solutions,*

*Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000).  Here, the Plan of Allocation reflects a

reasonable estimation of the amount of inflation of Vicuron securities during the Class Period. Accordingly, the plan is based on a reasonable estimation of losses of Class Members, which in turn depends on the date the stock was purchased and whether the stock was sold during the Class Period or held through the end of the Class Period. *See In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable."); *Smith v. Dominion Bridge Corp.*, No. 96-7580, 2007 U.S. Dist. LEXIS 26903, at \*22 (E.D. Pa. Apr. 11, 2007) (same); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 493 (E.D. Pa. 2003) (same).

Upon approval of the Plan of Allocation by the Court, the settlement administrator will determine each Authorized Claimant's pro rata share of the Net Settlement Fund based upon each Authorized Claimant's "Allowed Loss" as calculated in accordance with the formula set forth in the Plan of Allocation. Each Authorized Claimant will be allocated a pro rata share of the Net Settlement Fund based on his, her or its Allowed Loss as compared to the total Allowed Loss of all Authorized Claimants.

The favorable reaction of the Class also supports approval of the proposed Plan of Allocation. To date, no Class Member has objected to the Plan of Allocation, although Notices have been distributed to over 26,000 Class Members. The proposed Plan of Allocation is a fair, reasonable, and adequate method for allocating the Net Settlement Fund among the various Members of the Class and should be approved by the Court.

## VII.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the

settlement and the Plan of Allocation as fair, reasonable and adequate and in the best interests of the

Class.

DATED:  May 2, 2007                         Respectfully submitted,

                                            LAW OFFICES OF MARC S. HENZEL
                                            MARC S. HENZEL (MSH 2062)
                                            273 Montgomery Avenue, Suite 202
                                            Bala Cynwyd, PA  19004
                                            Telephone:  610/660-8000
                                            610/660-8080 (fax)

                                            Liaison Counsel

                                            LERACH COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
                                            WILLIAM S. LERACH
                                            LAURA M. ANDRACCHIO
                                            ELLEN GUSIKOFF STEWART


                                                    s/ Ellen Gusikoff Stewart
                                            ────────────────────────────────
                                                ELLEN GUSIKOFF STEWART

                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)

                                            LERACH COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
                                            SAMUEL H. RUDMAN
                                            ROBERT M. ROTHMAN
                                            DAVID A. ROSENFELD
                                            58 South Service Road, Suite 200
                                            Melville, NY  11747
                                            Telephone:  631/367-7100
                                            631/367-1173 (fax)

                                            Lead Counsel for Plaintiffs

O'REILLY GROSSO & GROSS, P.C.
JAMES F. GROSSO
1671 Worcester Road, Suite 205
Framingham, MA  01701-5400
Telephone:  508/620-0055
508/620-7655 (fax)

Additional Counsel for Plaintiffs

S:\Settlement\Vicuron Pharm.set\BRF SETTLEMENT 00041388.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 2, 2007.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:EllenG@lerachlaw.com

# Mailing Information for a Case 2:04-cv-02627-HB

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **JAY A. DUBOW**
  dubowj@pepperlaw.com

- **DEBORAH R. GROSS**
  debbie@bernardmgross.com

- **SEAN M. HANDLER**
  shandler@sbclasslaw.com

- **MARC S. HENZEL**
  mhenzel182@aol.com

- **STACEY A. LARA**
  stacy.lara@cwt.com,michael.abdo@cwt.com,greg.markel@cwt.com

- **ROBYN D. LEVITAN**
  rlevitan@wolfblock.com

- **RICHARD A. MANISKAS**
  rmaniskas@sbclasslaw.com

- **GREGORY A. MARKEL**
  greg.markel@cwt.com

- **SHERRIE R. SAVETT**
  ssavett@bm.net,sdavis@bm.net,mgatter@bm.net

- **BRIAN J. SLIPAKOFF**
  bslipakoff@wolfblock.com

- **ANASTASIA SMITH**
  asmith@omm.com

- **EVAN J. SMITH**
  esmith@brodsky-smith.com

- **TRISTAN SORAH-REYES**
  tsorahreyes@omm.com

- **ELLEN GUSIKOFF STEWART**
  elleng@lerachlaw.com,E_file_sd@lerachlaw.com,kristia@lerachlaw.com,jstark@lerachlaw.com

- **ARTHUR STOCK**

astock@bm.net,smoseley@bm.net

- **MARC S. WILLIAMS**
  mawilliams@omm.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**SETH ARONSON**
O'MELVENY & MYERS LLP
400 S. HOPE ST.
LOS ANGELES, CA 90071

**JASON L. BRODSKY**
BRODSKY & SMITH LLC
2 BALA PLAZA
STE 602
BALA CYNWYD, PA 19004

**DAVID I. HURWITZ**
O'MELVENY & MYERS LLP
400 SOUTH HOPE ST
LOS ANGELES, CA 90071

**JEFFREY W. KILDUFF**
O'MELVENY & MYERS
1625 EYE ST. NW
WASHINGTON, DC 20006

**LIANA LARSON**
LEARCH COUGHLIN STOIA GELLER RUDMAN & ROBBINS
401 B STREET SUITE 1600
SAN DIEGO, CA 92101

**WILLIAM S. LERACH**
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
655 WEST BROADWAY
SUITE 1900
SAN DIEGO, CA 92101

**NICHOLAS J. LICATO**
LERACH COUGHLIN STOIA & ROBBINS LLP
401 B STREET
SUITE 1700
SAN DIEGO, CA 92101

**TED MINAHAN**
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
401 B STREET
SUITE 1600
SAN DIEGO, CA 92101

**ROBERT ROTHMAN**
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS

58 SOUTH SERVICE ROAD
SUITE 200
MELVILLE, NY 11747

**SAMUEL H. RUDMAN**
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS
200 BROADHOLLOW ROAD
SUITE 406
MELVILLE, NY 11706

**LESLIE WEAVER**
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS
100 PINE ST. STE 2600
SAN FRANCISCO, CA 94111

**ROBIN WINCHESTER**
SCHIFFRIN & BARROWAY LLP
280 KING OF PRUSSIA RD
RADNOR, PA 19087-5108

**Manual Notice**

Aaron D. Krakow
Krakow & Souris, LLC
225 Friend Street
Boston, MA  02114
  617/723-8440
  617/723-8443 (Fax)

James F. Grosso
O'Reilly Grosso & Gross, P.C.
1671 Worcester Road, Suite 205
Framingham, MA  01701-5400
  508/620-0055
  508/629-7655 (Fax)