```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

|  |  |
|---|---|
| IN RE VICURON PHARMACEUTICALS, INC. SECURITIES LITIGATION | CIVIL ACTION |
| This Document Relates to:<br><br>ALL ACTIONS | NO. 04-2627 |

<u>MEMORANDUM</u>

Bartle, C.J.                                                May 31, 2007

        Before the court is the motion of the class representatives to award attorney's fees in the amount of $3,187,500, that is, 25% of the settlement amount of $12.75 million, and for reimbursement of $203,609.06 in costs and other expenses.  In an Order dated May 17, 2007, we entered final judgment in this case and approved the settlement agreement without explaining in detail our reasons for doing so.  In addition to deciding the pending motion, we now set forth that reasoning behind our earlier decision.

        Various plaintiffs brought these cases against defendants Vicuron Pharmaceuticals Inc. ("Vicuron") and certain officers and directors in this consolidated putative class action for violations of the Securities and Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b-5

promulgated thereunder, 17 C.F.R. § 240.10b-5.  On February 1, 2006, we certified a class comprising all purchasers of the securities of Vicuron between January 6, 2003 and May 24, 2004 and appointed class representatives and class counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure.  See In Re Vicuron Pharm, Inc., Sec. Litig., 233 F.R.D. 421 (E.D. Pa. 2006).

I.

According to the Amended Complaint, in January, 2003, Vicuron completed the third phase of its trial of anidulafungin, a drug it designed to treat esophageal candidiasis ("EC").[1]  At that time the two favored drugs for the treatment of EC were fluconazole and Caspofungin and Vicuron believed anidulafungin would join or surpass these drugs as the most effective treatment for EC.  Unfortunately, the third phase of the anidulafungin trial did not produce the results for which Vicuron had hoped. Within two weeks of treatment with anidulafungin, more than one-third of patients in the trial relapsed while only one-tenth of the patients treated with fluconazole and Caspofungin did so. Nevertheless, on March 17, 2003, plaintiffs contended that Vicuron stated that the third phase of the trial demonstrated that its drug was as effective as fluconazole.  Vicuron announced

---

1. Esophageal candidiasis is a serious infection of the esophagus — the tube that connects the mouth to the stomach.  It is caused by an overgrowth of Candida, a fungus that is normally found in the mouth, among other parts of the body.  Candida is part of the normal "flora" of bacteria and fungi that live in or on the human body and only threatens the health of a person when there is an overgrowth.

on April 28, 2003 that it had submitted a new drug application ("NDA") to the United States Food and Drug Administration ("FDA") for approval of anidulafungin as a treatment of EC.  In an accompanying press release, Vicuron asserted that its drug was as effective as fluconazole and that its NDA so stated.

The plaintiffs alleged that misrepresentations by the defendants during the proposed class period (January 6, 2003 to May 24, 2004) regarding the efficacy of anidulafungin resulted in the artificial inflation of the value of Vicuron's common stock to a high of $23.90 per share.  According to the plaintiffs, this artificial increase allowed Vicuron to complete a merger with Biosearch Italia in March, 2003 by using 21.4 million shares of Vicuron stock to support the transaction.  Vicuron was also able to complete a secondary offering of six million shares in July, 2003 for net proceeds of $83 million.

On May 24, 2004, Vicuron issued a press release acknowledging that the FDA had found its NDA for anidulafungin did not support the company's proposed labeling for the product.  While the press release disclosed that the FDA had serious concerns about how quickly EC reappeared in patients treated with anidulafungin as compared with fluconazole, it also stated that Vicuron's NDA might eventually be approved with additional clinical data or studies.  Upon the issuance of the press release, the value of Vicuron's stock sharply decreased to $13.04 per share, a loss of more than 40 percent from the previous day.  The stock subsequently dropped to below $10.00 per share.

Plaintiff Perry Paragamian filed a complaint in this court on June 15, 2004 and several other plaintiffs initiated actions as well.  Plaintiffs filed motions for consolidation that we granted in an Order dated August 23, 2004.  In a Memorandum and Order dated October 7, 2004 we appointed the "Institutional Investor Group," consisting of the Massachusetts State Guaranteed Annuity Fund, Massachusetts State Carpenters Pension Fund, and Greater Pennsylvania Carpenters Pension Fund, as lead plaintiff. See In re Vicuron Pharm., Inc., Sec. Litig., 225 F.R.D. 508 (E.D. Pa. 2004).  After further investigation, the lead plaintiff filed an amended complaint on behalf of a proposed class of plaintiffs.

On January 20, 2005 the defendants filed a motion to dismiss the amended class action complaint.  They maintained that any misrepresentations made were not material or were protected by the safe harbor provisions of the PSLRA regarding forward-looking statements.  Defendants further argued that the lead plaintiff had not alleged facts to permit an inference that the plaintiffs had acted with the scienter required by the PSLRA or that the statements caused the losses claimed by all the plaintiffs.  After further briefing and argument, we denied the motion to dismiss in a Memorandum and Order dated July 1, 2005.

Counsel for lead plaintiff and counsel for defendants then conducted extensive fact discovery over many months that included numerous third parties, motions, and phone conferences with the court.  Although defendants and the lead plaintiff were often able to resolve disputes, several motions to compel were

filed.  One of these motions sought production of an enormous quantity of electronic documents from defendants which the parties eventually resolved without a ruling from the court.  The plaintiffs filed for class certification on October 14, 2005.  In a Memorandum and Order dated February 1, 2006 we granted the motion of the lead plaintiff and certified the following class:

> All persons who purchased the securities of Vicuron during the period January 6, 2003 through May 24, 2004, inclusive. Excluded from the Class are the defendants herein, members of the immediate families of the Individual Defendants, any entity in which any defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such party.

Vicuron, 233 F.R.D. at 429.  We appointed the entities that comprised the lead plaintiff to be class representatives and named lead counsel to be counsel for the class.

In 2006, the class representatives negotiated a settlement with the defendants with the assistance of a mediator, a retired California state judge.  Under the settlement agreement the defendants agreed to pay the class $12.75 million and reimburse the expenses and costs of class counsel of up to $350,000, a sum that is greater than the $203,609.06 actually being requested here.

## II.

In an Order dated May 17, 2007, we entered final judgment in this case and approved the settlement agreement.

Although we did not set out our reasons for approving the settlement at that time, we do so now.

A district court may only approve a settlement of class action litigation if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).  Our Court of Appeals has identified nine factors to guide the district courts in approving proposed class action settlements.  See Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975).  These factors are:  (1) The complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534-35 (3d Cir. 2004) (citing Girsh, 521 F.2d at 156-57).  The court has further held that a presumption of fairness attaches to agreements if the district court finds: (1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.  In re Cendant Corp. Litig., 264 F.3d 201, 233 n.18 (3d Cir. 2001) (citation omitted).

In evaluating the proposed settlement in this case, we note that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995).  Settlement of complex class action litigation conserves valuable judicial resources, avoids the expense of formal litigation, and resolves disputes that otherwise could linger for years.  See id.; In re Sch. Asbestos Litig., 921 F.2d 1330, 1333 (3d Cir. 1990).

The class representatives submit that the proposed settlement is presumptively fair.  The settlement before us is the product of prolonged negotiations at-arms-length over many months between the class representatives and the defendants that required the mediation efforts of a retired California state judge.  The negotiations and eventual agreement took place with the benefit of voluminous fact discovery described above.  No member of the class has objected to the proposed settlement despite being provided notice and ample time to do so.  We also observe that the class representatives who seek approval are both sophisticated and experienced.  The settlement before the court satisfies the factors set forth by our Court of Appeals in GM Trucks and Cendant.  We find, therefore, that the settlement is presumptively reasonable, fair, and adequate.

Even so, we nevertheless evaluate it in light of the factors first enunciated by the Court of Appeals in Girsh, some

of which overlap with the those that establish the presumption of fairness.  See Warfarin, 391 F.3d at 534-35.

      The litigation has been ongoing for more than two years and had progressed through discovery before the parties reached the agreement now before this court for approval.  This case is more complicated than an average securities fraud class action due to the scientific nature of the facts underlying the claim. Defendants allegedly made false or misleading statements about a drug they were testing that artificially boosted the price of the stock of the defendant corporation.  The subject matter of these statements necessitated prolonged discovery.  There would also be expert testimony, were the case to go to trial, on the science of drugs efficacy, relapse rates, clinical studies, and EC.  Both sides devoted considerable time and money in extensive paper and electronic document discovery as well as expert testimony on the scientific topics above and the legal subjects of causation and damages.  The expense, duration, and complexity of this case weigh in favor of approving a settlement brokered after protracted negotiations and informed by voluminous discovery.[2]

      The class faced significant risk that it would not be able to establish either liability or damages, or both, had the case proceeded to trial.  Despite the strength of its evidence, certain weaknesses in the class' case as well as its heightened

---

2.  The second Girsh factor also suggests we approve the settlement.  As noted in greater detail below, not one of the more than 26,000 members of the class has objected to the award, attorney's fee percentage, or costs.

burden under PSLRA presented a significant possibility that the defendants would prevail at trial.  For example, it is possible that a jury would not have found that the statements made by the defendants were false, misleading, or material.  In addition, several of the statements that the class alleges to be misleading in certain contexts may have been found to be technically accurate standing alone and, therefore, not misleading.  It is also possible that the class would not have been able to prove at trial that the defendants acted with recklessness.  This risk was heightened by the fact that, as the class did not uncover any evidence of insider trading, it would be more difficult to prove scienter.  If the defendants could successfully persuade a jury that the statements they made related to the prospects of FDA approval, the PSLRA safeguards regarding forward-looking statements would have required the class to prove that the defendants knew the statements were false at the time they made them.  In such an event it would have been very difficult for the class to prevail.  Finally, had the case proceeded to trial, the technical nature of the subject matter would undoubtedly have reduced the case to a battle of experts.  Each side would have offered extensive testimony from expert witnesses on the efficacy of drugs, relapse rates, clinical studies, EC, causation, and damages.  Compelled to choose between experts, it is far from certain that a jury would have found for the class, much less awarded it damages on the order of the settlement agreement.

Finally, in addition to the risks inherent in trying a securities fraud case that arises from complicated medical facts, it is not certain that the class would have ultimately recovered even if it had prevailed at trial.[3]  Had the class prevailed at trial, the defendants would likely have filed any number of post-trial motions and, if necessary, appealed the decision to the Court of Appeals for the Third Circuit.  In such a situation, the defendants, setting aside the considerable expense and delay inherent to post-trial motions and appeal, might prevail as a matter of law or win a retrial.  The potential pitfalls further support approval of the settlement.

After careful consideration of the risks to the class of proceeding to trial including the weaknesses in the class' case, resources expended in this litigation, the lack of objection to the settlement, and the manner in which the settlement agreement was created, we conclude that the decision of the class representatives on behalf of the class to settle this case for the amount of $12.75 million is "fair, reasonable, and adequate."[4]  Fed. R. Civ. P. 23(e)(1)(C).

---

3. Of course, had the defendants prevailed at trial, the class would not recover any damages.  To reverse this outcome, the class would have been forced to file post-trial motions and perhaps try the case a second time at significant expense. Failing that, it would have had to seek relief from our Court of Appeals.

4. Even if we were to assume that the seventh <u>Girsh</u> factor--the defendant's ability to withstand a greater judgment--suggests we reject the settlement, this factor alone does not outweigh all the others.  In our view, the remaining <u>Girsh</u> factors
(continued...)

III.

The PSLRA provides that the attorneys for the class are not to be paid any more than "a reasonable percentage of the amount of any damages and prejudgement interest actually paid to the class."  15 U.S.C. § 78u-4(a)(6).  For many years, both the Supreme Court and our Court of Appeals have favored calculating attorney's fees as a percentage of the class recovery.  See Boeing Co. v. Van Gemert, 444 U.S. 472, 478-79 (1980); In re AT&T Corp., 455 F.3d 160, 164 (3d Cir. 2006); In re Prudential Ins. Co. America Sales Practice Litig. Agent, 148 F.3d 283, 333 (3d Cir. 1998); Court Awarded Attorney Fees, Report of Third Circuit Task Force, 108 F.R.D. 237 (1985).  While it the duty of the court to ensure that the statute's command is carried out, our Court of Appeals has explained that in a case like this one, a fee is presumptively reasonable if it has been fixed in an agreement between a properly selected class representative and properly appointed class counsel.  Cendant, 264 F.3d at 282-83.  This presumption may be rebutted if the awarded fee is shown to be prima facie "clearly excessive."  Id. at 283; AT&T, 455 F.3d at 167-68.

Our Court of Appeals has set forth the standards by which we measure and evaluate the reasonableness of proposed counsel fees.  See Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d Cir. 2000).  Those factors include:  (1) the size of the fund

---

4.  (...continued)
overwhelmingly support the approval of the settlement agreement.

created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. <u>Gunter</u>, 223 F.3d 195 n.1. These factors are not to be applied in a rigid, formulaic manner, but rather a court must weigh them in light of the facts and circumstances of each case. Finally, if we do not reach a conclusion considering the <u>Gunter</u> factors, we may conduct a lodestar cross-check.[5] <u>Cendant</u>, 264 F.3d at 284-85.

      Class counsel seeks approval of 25% of the settlement amount, that is, approximately $3,187,500, and costs in the amount of $203,609.06. The class representatives approved the fee percentage after reviewing the award obtained by class counsel and, in addition, approved up to $350,000 in expenses. We apply the factors set out by our Court of Appeals in <u>Gunter</u>.

      We first consider the results obtained by class counsel for the benefit of the class. Specifically, we look to the size of the recovery in relation to the size of the class. Class

---

5. While our Court of Appeals noted in <u>Cendant</u> that in prior cases it had "recommended" that district courts weigh both the <u>Gunter</u> factors and conduct a lodestar analysis, we are not required to do the latter. Rather, the Court of Appeals has explained that we "can consider" a lodestar analysis "if necessary." <u>Cendant</u>, 264 F.3d at 221, 284-85 (citations omitted). Nevertheless, we conduct such an analysis to confirm our conclusion based on the <u>Gunter</u> factors.

counsel obtained a settlement of $12.75 million dollars for a class estimated to number 26,000.  Because the precise size of the class is not certain, the precise benefit per share or per class member cannot be determined.  Nevertheless, the size of the settlement is substantial considering the defendants denied, and continue to deny, liability and litigated this case before the court for two years before they settled.

        Pursuant to this court's Order of February 1, 2007, copies of the proposed settlement and notice were mailed to more than 26,000 members of the class along with notice of the opportunity to object to the attorney's fee and cost reimbursement provisions.  Class counsel supplemented their mailed notice by publicizing the settlement in various financial publications.  Despite this notice, not one member of the class objected within the time allotted, that is, before April 20, 2007.  In addition, no class members objected to any part of the settlement at the hearing conducted on May 17, 2007, and as of that date neither the court nor class counsel had received any objection from a member of the class.

        We also observe that the settlement obtained by class counsel was achieved after it alone conducted the investigation and prosecuted the case against opponents represented by highly skilled counsel.  No agency of the United States, including the Securities and Exchange Commission, conducted any investigation of this matter and so class counsel had to perform all the work.  Class counsel successfully litigated defendants' motion to

dismiss, engaged in extensive discovery, and obtained class certification.  The defendants opposed class counsel each step of the way.  Class counsel nevertheless engaged in this litigation for two years on a contingent basis.  At the fairness hearing, we requested that class counsel submit a detailed breakdown of the hours it billed.  Counsel has now done so and, after carefully reviewing that material, we are satisfied that the hours devoted to this case by class counsel were reasonable.  Furthermore, we note that in similar cases our Court of Appeals has approved awards of counsel fees that range from 19% to 45%.  See GM Trucks, 55 F.3d at 822.  The 25% fee in this case is less than the average fee in the low 30% range that is customary in this circuit.

In sum, the facts and circumstances of this case in addition to the efforts of counsel evaluated pursuant to the Court of Appeals' command in Gunter weigh in favor of approving the counsel fee agreement between class counsel and the class representatives.

Although not required to do so by our Court of Appeals, we check our conclusion under Gunter with the lodestar method.  See Lindy Bros. Builders, Inc., et al. v. American Radiator & Standard Sanitary Corp., et al., 487 F.2d 161, 167-68 (3d Cir. 1973).  We are first required to determine the number of hours expended by the class counsel in this action.  Counsel submits that they have expended 3,352 hours in the prosecution of this matter.  Adjusted for the various rates charged, the cumulative

lodestar for counsel fees is $1,423,680. This suggests a lodestar multiplier of 2.23 which is lower than in numerous other cases where multipliers between 2.5 and 4 have been approved. The lodestar confirms our conclusion that the fee agreement is reasonable under Gunter.

Finally, at the hearing we asked class counsel to submit to the court further information explaining the specifics of the expenses for which it seeks reimbursement. Counsel has provided this information and, after careful review of the materials submitted, we are confident that class counsel's request for reimbursement of expenses in the amount of $203,609.06 is reasonable and fair both to counsel and the class.

IV.

In conclusion, pursuant to Rule 23(e), we have found that the settlement amount of $12.75 million is reasonable and fair to the members of the class. In addition, counsel fees of 25% of the award amount, or $3,187,500, are also reasonable in light of the governing law and the factual circumstances of this case. Finally, counsel's request for reimbursement of costs in the amount of $203,609.06 is likewise appropriate. Accordingly, we will grant the motion of the class representatives for the award of attorney's fees and reimbursement of expenses.

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| IN RE VICURON PHARMACEUTICALS,<br>INC. SECURITIES LITIGATION | : <br> : CIVIL ACTION <br> : |
| This Document Relates to:<br><br>ALL ACTIONS | : <br> : NO. 04-2627 <br> : |

ORDER

AND NOW, this 31st day of May, 2007, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of the class representatives for award of attorneys' fees and reimbursement of expenses is GRANTED; and

(2) class counsel is awarded attorney's fees in the amount of $3,187,500, as well as costs and expenses in the amount of $203,609.06.

                              BY THE COURT:


                              /s/ Harvey Bartle III
                                                    C.J.